### STONE et al. v. BROADWAY et al. (No. 414.)

Court of Civil Appeals of Texas. Eastland. March 30, 1928.

Rehearing Denied May 18, 1928.

**1. Attorney and client ☞124—Power of attorney held not to give grantee present vested interest in land to be recovered without performance on his part.**

Power of attorney providing that in· consideration of services attorney should receive a two-thirds interest in estate of grantor, which did not describe any particular land, but showed intention that attorney should acquire interest by doing something to affect recovery of land, *held* not to give attorney present vested interest in land without any active performance on his part.

**2. Vendor and purchaser ☞239(1)—Grantees in deed ratifying their lease of land held purchasers in good faith as against attorney empowered to recover grantor's interest.**

Where husband and wife, having interest in land, executed power of attorney empowering recovery of land and granting interest in such land in event recovery was had, but prior to institution of suit by attorney executed deed ratifying lease of land made by grantees named in deed, *held*, that grantees in deed of ratification, having no notice of power, were purchas-

ers in good faith and entitled to protection as such.

**3. Attorney and client ⊕⊃124—Attorney under power not conveying present interest had burden of showing performance, notice of which was brought home to subsequent grantees of property.**

Attorney claiming interest in land by virtue of power of attorney empowering him to recover same, and, in event thereof, giving him interest, *held* to have burden of showing performance under power, and that notice thereof was brought home to grantees in subsequent deed executed by grantor of power ratifying grantee's lease of property for oil purposes.

**4. Estoppel ⊕⊃43—Lessees and assigns held beneficiaries of after-acquired title acquired by lessor through ratifying deed.**

A lessor executed a lease on land in which there was an outstanding interest. Subsequently the owner of such interest executed a power of attorney authorizing its recovery and granting interest therein in event of such recovery. Prior to filing of suit by attorney, grantor of power executed a deed to lessor and heirs, their lessees and assigns, ratifying lease. *Held*, that lessees became beneficiaries of title acquired by their lessors which inured to benefit of defendants whose interests were derived through the original lease.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Suits by J. H. Broadway and others against F. W. Stone and others and against the Phillips Petroleum Company, consolidated by agreement of parties and by order of the court. Judgment for plaintiff E. J. Miller, and defendants appeal. Reversed and rendered.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellants.

Jenkins, Miller & Wilson, of Brownwood, and Milburn McCarty, of Eastland, for appellees.

LESLIE, J. On August 21, 1922, J. H. Broadway and wife, Q. V. Broadway, and E. J. Miller instituted this suit in the district court against defendants F. W. Stone, J. L. McMurray, M. E. Wakefield, C. C. Neeb, Joe H. Shackelford (alleged to compose a copartnership styled F. W. Stone & Co.), the Humble Oil & Refining Company, and the Prairie Oil & Gas Company. Another suit in which the same plaintiffs sued the Phillips Petroleum Company was, by agreement of the parties and order of the court, consolidated with this cause, and the Phillips Petroleum Company became a codefendant with the others. Some of the defendants pleaded in cross-action against others, relying upon warranties contained in instruments of conveyance.

B. F. Eakin and the children of his deceased wife executed October 11, 1921, an oil and gas lease on the lands in question to J. N.

Gooch et al. They in turn conveyed the lease with a drilling contract to F. W. Stone et al.

The interest of the plaintiffs, and especially the interest of E. J. Miller, appellee here, arose in this manner: B. F. Eakin and Mahala F. Eakin owned 100 acres of land as community estate. Mahala Eakin died intestate about 1913. Born to them and surviving at that time were nine children. They inherited a one-half interest in the land. B. A. Eakin was one of these children. He married Iva Broadway, the daughter of J. H. and Q. V. Broadway, two of the original plaintiffs. B. A. Eakin died without children and intestate on February 17, 1920. As he owned a one-ninth of one-half of said community estate at his death, therefore his wife, Iva Eakin, inherited under the circumstances one-half of his interest, or one-half of his one-eighteenth, making a one thirty-sixth interest in said lands. His wife, Iva Eakin (née Broadway) died on February 24th, following, without children and intestate, and her one thirty-sixth interest in the property was inherited by her father and mother, J. H. and Q. V. Broadway. The interest thus acquired by the Broadways is unquestioned.

This interest of the Broadways seems to have passed unnoticed by all interested parties at the time B. F. Eakin and his eight surviving children executed and delivered to J. N. Gooch and others, October 11, 1921, the oil and gas lease under the terms of which the property in question has been developed. By assignments and transfers various interests under said lease have passed to different defendants in this cause, thus accounting for their presence in the suit and their assertion of protection under warranties. The particulars in this respect it is unnecessary for us to recite, in view of the disposition we shall make of this appeal.

For a considerable length of time the Broadway interest in the lands under the lease passed undiscovered and vast quantities of oil were produced from the premises.

June 28, 1922, the Broadways executed and delivered to E. J. Miller, an attorney at law, a power of attorney, as follows:

"Know all men by these presents: That we, J. H. Broadway, and wife, Q. V. Broadway, of the aforesaid county and state, in consideration of the sum of one dollar ($1.00) to us in hand paid by E. J. Miller, of Brownwood, Texas, the receipt of which is hereby acknowledged, and for other good and valuable considerations, have nominated, constituted, and appointed and by these presents do nominate, constitute, and appoint the said E. J. Miller our attorney in fact to recover for us any and all right, title, and interest we may be entitled to in any lands or estate in the state of Texas, and especially in the counties of Brown, Eastland and Callahan, or either of them, hereby authorizing and empowering our said attorney to sue for, recover, sell, convey, or compromise, as he may deem best, any such right, title, or interest which

⊕⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

we may have in and to all lands and estate in the state of Texas, and for and in consideration of his services in locating, recovering, and disposing of said lands for us, we hereby grant to the said E. J. Miller an undivided two-thirds (⅔) interest in and to any and all such lands, estate, and property, to have and to hold unto him, his heirs and assigns forever; and we hereby ratify and confirm all and every the acts of our said attorney hereunder, who is fully authorized to do any and all things that we or either of us might do if present and acting in person, with reference to the recovery and disposition of the aforesaid estate.

"In testimony whereof, witness our hands this June 28, A. D. 1922.     J. H. Broadway.
"Q. V. Broadway."

This power of attorney was filed for record July 3, 1922, in Eastland county, where the land is situated. It was entered of record the same day, and about that time Miller either mailed or delivered notices of the existence of said power of attorney and his rights thereunder to the Prairie Oil & Gas Company, Humble Oil & Refining Company, F. W. Stone & Company, and Stone & Wakefield. The next occurrence in chronological order was the execution and delivery by J. H. Broadway and wife, on August 17, 1922, to B. F. Eakin et al., of what is designated in the record as a "ratification deed." By reason of its important and serious effect upon Miller's rights under his power of attorney, that instrument will be set out in full:

"This contract and agreement made and entered into by and between J. H. Broadway and wife, Q. V. Broadway, hereinafter called first parties, and B. F. Eakin and Fred Douglass Eakin (represented by his legally appointed guardian, B. F. Eakin), S. H. Eakin, W. W. Eakin, G. B. Jones et ux., Lucy P. Jones, J. P. Bearden et ux., Lessie G. Bearden, R. W. Hodnett et ux., Middie D. Hodnett, J. J. Berry et ux., Mattie M. Berry, and Whitt Berry et ux., Maud L. Berry, hereinafter called second parties, witnesseth: That whereas, heretofore second parties executed oil and gas leases covering in the aggregate one hundred acres of land out of the W. G. Watkins survey in Eastland county, Texas, known as the B. F. Eakin tract, near the town of Pioneer, Texas, in favor of T. B. Slick and J. N. Gooch, S. H. Eakin and E. W. Richardson, said leases being recorded in deed records of Eastland county, Texas, to which leases and the record thereof reference is here made for all purposes;

"And whereas, first parties own an undivided interest in and to said one hundred acres of land, by virtue of having inherited a one thirty-sixth undivided interest through their deceased daughter; and whereas, first parties are desirous of ratifying and adopting said oil and gas leases so executed by second parties, and are desirous of receiving the inherited share of their deceased daughter, Ivy Eakin (née Broadway), so that they will retain an undivided one thirty-sixth royalty interest in and to one-eighth of all the oil and gas produced and saved from said one hundred acres of land:

"Now, therefore, know all men by these presents: That we, J. H. Broadway, joined by my wife, Q. V. Broadway, of Lampasas county, Texas, do by these presents ratify, confirm, and adopt said oil and gas leases executed by said second parties unto the lessees or assignees of said oil and gas leases, so that we hereby specifically retain and reserve unto ourselves an undivided one thirty-sixth (1/36th) interest of one-eighth (⅛) of the royalty in and to said one hundred acres of land, and we hereby disclaim any greater interest in said one hundred acres of land and the minerals thereunder than the inherited share of their deceased daughter, Ivy Eakin, being a one thirty-sixth of one eighth of the oil and gas in and under said land, hereby quitclaiming and releasing unto second parties all our right, title, and interest in said one hundred acres of land, save and except said one thirty-sixth of one-eighth royalty interest as aforesaid.

"In consideration of the above, second parties agree to pay unto first parties in cash all that said one thirty-sixth interest of the royalty has earned to date, according to verified statements of the pipe line or oil companies, and agree that first parties shall thereafter be entitled to the proceeds from all of the oil runs that such one thirty-sixth of the one-eighth royalty shall earn hereby quitclaiming and releasing unto first parties all their right, title, and interest in and to said one thirty-sixth of one-eighth royalty interest in and to said one hundred acres of land and oil and gas thereunder.

"In witness whereof, the parties hereto have hereunto set their hands in duplicate originals this the 17th day of August, A. D. 1922.
"B. F. Eakin et al.
"J. H. Broadway et ux."

Following the execution and delivery of this deed of ratification to B. F. Eakin et al., *and but three days subsequent thereto*, said Miller, with the said J. H. Broadway and Q. V. Broadway as coplaintiffs, filed this suit in the district court of Eastland county on *August 21, 1922*, for the recovery of an interest in said properties in proportion to his apparent rights specified in the power of attorney. His rights thus indicated would be two-thirds of a one thirty-sixth, or one fifty-fourth interest in the whole estate covered by the lease; that is, his interest would extend to one fifty-fourth of the one-eighth landowner's interest or royalty and one fifty-fourth of the seven-eighths operator's interest.

On the trial the Broadways disclaimed any interest in the suit and withdrew. Miller, for some reason not indicated by the record, and apparently of no importance, had relinquished to the Broadways, prior to the trial, his claim upon any portion of the one thirty-sixth of the one-eighth royalty and elected to prosecute this suit for his alleged one fifty-fourth interest in the seven-eighths operator's interest.

The trial was before the court and judgment went in favor of Miller for the value of minerals taken from said land, less certain deductions allowed for development of the property. There are some contentions as to

whether these deductions should or should not have been allowed, but the action of the court in that respect becomes unimportant, if we are correct in the conclusions reached.

The first three assignments and the propositions laid thereunder relate to the power of attorney and Miller's rights to recover thereunder. The court's judgment in disregard of appellants' contentions with reference to said power and the appellee's asserted rights furnishes the basis of said assignments.

Miller's claims rest solely upon the power of attorney, and, as we interpret his contentions, by that instrument the Broadways then and there and by its execution and delivery assigned and conveyed to the plaintiff E. J. Miller an undivided two-thirds interest in all the lands and estate which they owned or were entitled to in Eastland, Callahan, and adjoining counties." His prayer is for recovery as against all the defendants (except the Humble and the Prairie Companies) for one thirty-sixth of the oil, gas, and mineral taken from the premises, and a recognition of his rights in the future to such an interest in the products produced, and, as to the Humble and Prairie Companies, for one thirty-sixth of the oil received by them from the lands in question. It clearly appears that the appellee Miller prosecutes this suit upon the theory that the power of attorney conveyed to him at the date of its delivery a present vested interest in the lands involved, and that the registration thereof, *July 3, 1922,* carried with it the notice usual in instruments conveying an interest in real estate. In other words, it would appear that the appellees' view is that the instrument would support a suit in trespass to try title to the particular lands described.

It will be observed that the notice given by Miller on the 1st and 3d of July, 1922, ran to the Humble Oil & Refining Company, the Prairie Oil & Gas Company, and others, but not to B. F. Eakin and the heirs of his wife. The appellants Wakefield and others contend (1) that Miller's petition fails to allege that he had performed any services under his agreement or power of attorney prior to the execution and delivery by the Broadways of the deed of ratification of date *August 17, 1922;* (2) that the undisputed record shows that up to the time of such ratification Miller had done nothing under his power of attorney toward recovering anything for the Broadways, except the giving of the aforesaid notice that he held such power, and that it was coupled with an interest; (3) that there is in this record neither pleading nor proof that B. F. Eakin and the heirs of his wife at the date of such ratification had any notice of any character of performance by Miller under his power of attorney; (4) that, Miller's power of attorney being merely executory in its nature, and not having brought his suit before August 17, 1922, at which time the Broadways, as tenants in common of the land, with B. F. Eakin and his heirs, ratified the original lease under which the defendants claim, he (Miller) was bound by such ratification, and his recovery, if any, after such ratification, would be subject to the lease held by the defendants.

[1] In view of these contentions, plaintiff's pleadings have been carefully read and considered. We find no allegations therein that Miller at any time prior to said ratification did anything under the power of attorney or in any manner executed such performance of his obligations as was essential to mature his interest in the lands; in fact, there is neither pleading nor proof in the record that Miller, prior to said ratification, performed any of the obligations resting upon him under the terms of the power, and it follows as a matter of course that no actual notice of such performance could have been brought home to B. F. Eakin and said heirs at the time or prior to the date of ratification. Such notice as he had given of the existence of the power and his interest therein had not been directed to Eakin and heirs. There is such a complete omission from plaintiff's pleadings of any allegations of any performance on his part prior to August 17, 1922, of his obligations under the power, or of any actual notice of any character of performance, to Eakin and heirs on or before that date, that we are forced to the conclusion that the plaintiff relies solely upon his power of attorney as giving him a present vested interest in the particular land and money in controversy and that he thus acquired such title without any active performance upon his part. As we view it, plaintiff relied strictly upon a paper title as evidenced by the power of attorney. An examination of the same discloses that it described no particular land and the evident purpose and intention in executing and delivering it was that Miller should acquire a two-thirds interest in the property by doing something to effect a recovery of the property in dispute. His interest under the power was to be in property recovered. His power was executory in its nature and by it there was no grant to him of a present interest in the land in its existing status. It remained for future performance upon Miller's part to vest in him an interest in the particular land. Our view of Miller's rights under his power of attorney is clearly expressed by Chief Justice Phillips in Browne v. King, 111 Tex. 330, 235 S. W. 522. The facts in that case and the power of attorney ([Tex. Civ. App.] 196 S. W. 884) there construed renders that opinion strikingly in point and decisive of this appeal. Miller occupies the same relation in this cause as Browne in that one, Eakin and heirs the position there held by Mrs. King, and the Broadways that of the Acebos. With such substitution carried in mind, the quotation of an excerpt from that opinion is pertinent here:

"But, at best, Browne's right was only an equity; and if fully perfected by his entire per-

formance of the contract could only have amounted to an equitable interest. If it be admitted that at the time of the sale by the Acebos of the legal title to Mrs. King he had done everything required of him under the contract up to that time, and that but for such' sale he would have been able to recover the land, yet, if Mrs. King bought the title without notice of his equity, she would be entitled to protection as an innocent purchaser. Mrs. King had constructive notice of the contract when she purchased the legal title. But the contract of itself conferred no equity. Performance by Browne of the agreement was necessary to the creation of his · equitable interest, and therefore to affect the legal title in Mrs. King's hands with his interest it was necessary that he establish that she bought with notice of such performance. There was no proof that she had such notice. According to the record she knew nothing of Browne's relation to the suit of the Acebos or of anything he had done in performance of his contract with them. The record of the contract gave her no such notice, and the suit itself in no way disclosed Browne's connection with it."

Under the record before us, *Miller's suit was filed subsequent to the deed of ratification* or the conveyance by the Broadways to Eakin and heirs, and the suit would, have no bearing on the question of notice.

The opinion in Browne v. King, supra, has been followed by the Commission of Appeals in the most interesting case of Bowles et al. v. Bryan (Tex. Com. App.) 247 S. W. 276, rehearing denied, and again in the same case by the Dallas Court of Civil Appeals, 277 S. W. 760, writ of error dismissed. We think these authorities fully sustain our conclusions.

[2, 3] Under the circumstances, as shown by this record, Eakin and heirs became purchasers in good faith and entitled to protection as such. No question of the want of consideration to support the Broadway deed of ratification is presented. It imported a valid consideration on the date of its execution. There is in the record no proof by Miller that said instrument was unsupported by such consideration. In the instant case performance and timely notice thereof would have protected Miller's rights as effectively as the registration of a senior deed would protect against claims under a junior deed to the same property, and in the latter class of cases it will be observed that the law is well established that the holder of an unrecorded senior deed has the burden (upon the issue of want of consid-

eration) of proving the junior deed without consideration. Matthews v. Houston Oil Co. (Tex. Civ. App.) 299 S. W. 450.

Upon principle in the case at bar a like burden rested upon Miller, which he failed to discharge. We do not think the correctness of this view can be questioned, since upon the authority of Browne v. King, supra, Miller's power of attorney was merely executory and the duty devolved upon to show performance under the contract and that notice of such performance was in timely manner brought home to Eakin and the heirs of his wife, as herein stated.

[4] The ratification of August 17th, antedating the filing of the suit by Miller and being in the nature of a deed and conveyance to Eakin and heirs, their lessees and assigns (Benton Land Co. v. Jopling [Tex. Com. App.] 300 S. W. 28), and that instrument being a full and complete adoption and ratification of the original lease, we conclude that Gooch and others, original lessees, became the beneficiaries of an after-acquired title upon the part of Eakin and others. Such after-acquired title necessarily inures to the benefit of the appellants whose respective interests by transfer and assignment are derivative through the original lease of date October 11, 1921. T. P. Coal & Oil Co. v. Fox (Tex. Civ. App.) 228 S. W. 1021; Bell v. Gaines (Tex. Civ. App.) 237 S. W. 346.

The assignments hereinbefore discussed are sustained. Under the views expressed it becomes unnecessary to pass upon other assignments by appellants or cross-assignments urged by appellee. In the oral agrument of this case before the court the attorneys for the respective litigants called our attention to the fact that this litigation had extended over a considerable period of time and they asserted that the record was in such condition as would enable this court to make a decisive end of this litigation. However, they did not venture to waive any assignment that might work a mere reversal, but their insistence in the respect mentioned indicates to our mind that the case has been fully developed.

Therefore, after a careful consideration of the record before us, and for the reasons assigned, we conclude that the judgment of the trial court should be reversed, and that judgment should here be rendered in favor of appellants, and that the appellee Miller take nothing by his suit.

It is so ordered.